# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CALIFORNIA RURAL LEGAL ASSISTANCE FOUNDATION *et al.*, <br><br> *Petitioners*, <br><br> v. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY *et al.*, <br><br> *Respondents,* <br><br> and <br><br> SYNGENTA CROP PROTECTION, LLC, <br><br> *Intervenor-Respondent*. | Case No. 21-71287 |

## PETITIONERS' OPPOSITION TO RESPONDENTS' MOTION FOR VOLUNTARY REMAND

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

BACKGROUND ...................................................................................................2

    A.    Paraquat ...................................................................................2

    B.    The Federal Insecticide, Fungicide and Rodenticide Act ....................3

    C.    The Decision......................................................................5

    D.    The Litigation ..................................................................6

STANDARD OF REVIEW ....................................................................................8

ARGUMENT ........................................................................................................9

  I.    EPA Impermissibly Seeks Vacatur of the Decision Without a Ruling on the Merits ...............................................................................................9

  II.   EPA Lacks a Substantial and Legitimate Basis for Remand.......................11

  III.  Remand Would Unduly Prejudice Petitioners...............................................13

  IV.  Remand Would Not Conserve the Parties' or the Court's Resources..........16

  V.   Remand Would Sanction a Violation of EPA's Statutory Deadline............18

CONCLUSION ...................................................................................................19

CERTIFICATE OF SERVICE ...........................................................................22

CERTIFICATE OF COMPLIANCE....................................................................23

# TABLE OF AUTHORITIES

## Cases

*Am. Waterways Operators v. Wheeler*,
  507 F. Supp. 3d 47 (D.D.C. 2020). ....................................................................18

*AT&T Corp. v. Fed. Commc'ns Comm'n*,
  841 F.3d 1047 (D.C. Cir. 2016) ...........................................................19

*Cal. Cmtys. Against Toxics v. EPA*,
  688 F.3d 989 (9th Cir. 2012).................................................................. 13, 19

*Ctr. for Food Safety v. Regan*,
  56 F.4th 648 (9th Cir. 2022)...................................................................9

*Dieffenbacher v. DeVos*,
  2017 WL 4786096 (C.D. Cal. June 9, 2017) ........................................13

*Harvest v. Castro*,
  531 F.3d 737 (9th Cir. 2008)..................................................................11

*In re Clean Water Act Rulemaking*,
  60 F.4th 583 (9th Cir. 2023)............................................8, 9, 10, 11, 19

*In re Nat. Res. Def. Council*,
  956 F.3d 1134 (9th Cir. 2020)................................................................14

*In re Wash. Cattlemen's Ass'n*,
  2022 WL 4393033 (9th Cir. Sept. 21, 2022) .......................................10

*Keltner v. United States*,
  148 Fed. Cl. 552 (2020) .........................................................................9

*Lewis v. Sec'y of Navy*,
  2014 WL 12787221 (D.D.C. Sept. 2, 2014) .........................................13

*Lutheran Church-Missouri Synod v. Fed. Commc'ns Comm'n*,
  141 F.3d 344 (D.C. Cir. 1998) ..........................................................2, 13

ii

*MCI Telecommunications Corp. v. Fed. Commc'ns Comm'n.*,
    627 F.2d 322 (D.C. Cir. 1980) ....................................................... 19, 20

*N. Coast Rivers All. v. U.S. Dep't of the Interior*,
    2016 WL 11372492 (E.D. Cal. Sept. 23, 2016) .............................. 9, 11

*Pac. Coast Fed'n of Fishermen's Ass'ns v. Raimondo*,
    2022 WL 789122 (E.D. Cal. Mar. 11, 2022) ....................................... 13

*Pollinator Stewardship Council v. EPA,*
    806 F.3d 520 (9th Cir. 2015) ............................................................. 15

*Sierra Club v. Nat'l Marine Fisheries Serv*.,
    711 F. Supp. 3d 522 (D. Md. 2024) ....................................... 17, 19, 20

*SKF USA Inc. v. United States*,
    254 F.3d 1022 (Fed. Cir. 2001) ........................................................ 11

*Stevenson v. Wormuth*,
    2023 WL 3791721 (D. Conn. June 1, 2023) ......................................... 9

*Univ. Med. Ctr. of S. Nevada v. Shalala*,
    5 F. Supp. 2d 4 (D.D.C. 1998) .......................................................... 17

*Util. Solid Waste Activities Grp. v. EPA*,
    901 F.3d 414 (D. C. Cir. 2018) ......................................................... 13

**Statutes**

7 U.S.C. § 136(bb) .................................................................................... 4

7 U.S.C. § 136a(a) .................................................................................... 3

7 U.S.C. § 136a(c)(2)(B) ........................................................................... 8

7 U.S.C. § 136a(c)(5)(D) ........................................................................... 4

7 U.S.C. § 136a(g)(1)(A)(iii) ................................................................. 4, 17

7 U.S.C. § 136n(b) .................................................................................. 10

Consolidated Appropriations Act,

Pub. L. No. 117-328, § 711(a), 136 Stat. 4459 (2022). .......................................18

**Regulations and Federal Register Notices**

40 C.F.R. § 155.53(a) ..................................................................4

40 C.F.R. § 155.56 ..............................................................5, 11, 12

40 C.F.R. § 155.57 ..................................................................4

40 C.F.R. § 155.58(b) ................................................................4

40 C.F.R. § 155.58(d) ...............................................................16

40 C.F.R. § 156.10(i) ................................................................5

Pesticides; Procedural Regulations for Registration Review,
70 Fed. Reg. 40,251 (proposed July 13, 2005) ..................................5

**Other Authorities**

Amudalat Ajasa, *70 Countries Have Banned this Pesticide. It's Still for Sale in the
United States*, Wash. Post (Jan. 23, 2025). ...............................3

EPA, *Paraquat Dichloride*, https://www.epa.gov/ingredients-used-pesticide-
products/paraquat-dichloride (last updated June 26, 2024) ....................3

*Moore's Federal Practice* § 60.64 (3d ed. 2006). ...................................11

Negar Omidakhsh et al., *Thyroid Cancer and Pesticide Use in a Central California
Agricultural Area: A Case Control Study*, 107 J. Clinical Endocrinology &
Metabolism e3574 (2022) ..................................................2

U.S. Geological Surv., *Estimated Agricultural Use of Paraquat*: *2018
(Preliminary)*,
https://water.usgs.gov/nawqa/pnsp/usage/maps/show_map.php?year=2018&map
=PARAQUAT&hilo=L (last updated Feb. 26, 2024) ..........................14

*Vacatur, Black's Law Dictionary* (12th ed. 2024) .....................................9

iv

# INTRODUCTION

The Environmental Protection Agency ("EPA") requests a remand to withdraw a July 2021 decision that establishes critical protections against the highly toxic herbicide paraquat, the use of which is associated with Parkinson's disease and other severe harms. But no party in this suit has ever argued that the Interim Registration Review Decision for paraquat (the "Decision") should be withdrawn. Indeed, EPA's own analysis confirms that withdrawal would pose an unreasonable risk to human health. The only issue in this case is whether the Decision is protective enough. To avoid a ruling on that issue, EPA asks the Court to relinquish its exclusive jurisdiction and to send the Decision back to EPA to be vacated, prolonging and increasing exposures to dangerous levels of paraquat.

EPA's motion should be denied for several reasons. First, EPA is effectively seeking remand with vacatur but without a ruling on the merits, in violation of this Circuit's precedent. Second, EPA has no legitimate basis for its motion, and the sole justification it provides—a desire to further study paraquat's volatilization—requires neither remand nor withdrawal of the Decision. Third, withdrawal of the Decision would cause serious harm to Petitioners and the public. Fourth, the alleged efficiency benefits of EPA's motion are illusory, since the failure to resolve Petitioners' claims will merely set the stage for additional litigation to address issues that have already been briefed in this case. Finally, EPA's proposed

timeframe for action upon remand violates the statutory deadline for paraquat's final registration review decision.

After multiple extensions of its briefing deadline, a prior remand motion that EPA withdrew, and a two-year abeyance to prepare a document that never materialized, EPA has "employed some rather unusual legal tactics . . . to avoid judicial review" of the Decision, but "this ploy may well take the prize." *Lutheran Church-Missouri Synod v. Fed. Commc'ns Comm'n*, 141 F.3d 344, 349 (D.C. Cir. 1998). The Court should deny EPA's motion and allow Petitioners' long-delayed claims to finally proceed to a ruling on the merits.

## BACKGROUND

The facts relevant to this case are set forth in Petitioners' Opening Brief, ECF No. 27-1, and are summarized below.

### A.    Paraquat

"Paraquat is considered the most highly toxic herbicide to be marketed over the last 60 years."[1] A single exposure can cause lasting respiratory harm, 3-ER-407,[2] and dermal contact "common[ly]" results in "incidents . . . severe enough to

---

[1] Negar Omidakhsh et al., *Thyroid Cancer and Pesticide Use in a Central California Agricultural Area: A Case Control Study*, 107 J. Clinical Endocrinology & Metabolism e3574, e3577 (2022), https://academic.oup.com/jcem/article/107/9/e3574/6650257?login=false.

[2] Citations to X-ER-X are to the Petitioners' excerpts of record, submitted with their opening brief. ECF No. 28-1 to 28-4.

require skin grafts." 3-ER-563. Paraquat is also deadly when ingested; "one small sip can be fatal and there is no antidote."[3]

Long-term exposure to even low doses of paraquat is associated with an increased risk of Parkinson's disease, a degenerative neurological condition that afflicts approximately one million people in the United States. 2-ER-254. A "plethora of studies" have found that farmworkers who are exposed to paraquat experience a greater risk of Parkinson's disease, 3-ER-551, 3-ER-624.

Approximately 70 countries, including China, Brazil, and members of the European Union ("EU"), have banned the use of paraquat because of its severe health risks. *See* Amudalat Ajasa, *70 Countries Have Banned this Pesticide. It's Still for Sale in the United States*, Wash. Post (Jan. 23, 2025). With EPA's approval, however, paraquat remains "one of the most widely used herbicides" in the United States, with millions of pounds sprayed across more than 15 million acres of soybeans, cotton, grapes, and other crops each year. 1-ER-12.

## B. The Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA")

FIFRA prohibits the sale or distribution of a pesticide that has not been approved—or "registered"—by EPA. 7 U.S.C. § 136a(a). Before registering a pesticide, EPA must find that it "will not generally cause unreasonable adverse

---

[3] EPA, *Paraquat Dichloride*, https://www.epa.gov/ingredients-used-pesticide-products/paraquat-dichloride (last updated June 26, 2024).

3

effects on the environment." 7 U.S.C. § 136a(c)(5)(D). An "unreasonable adverse effect[] on the environment" is defined as "any unreasonable risk to [people] or the environment, taking into account the economic, social, and environmental costs and benefits of the use of [the] pesticide." *Id.* § 136(bb) . Therefore, when EPA identifies an elevated risk from a pesticide (sometimes known as a "risk of concern"), EPA must weigh that risk—and its associated economic, social, and environmental costs—against the pesticide's benefits to determine if the risk is unreasonable. *Id.* If EPA finds unreasonable risk, meaning the pesticide does not satisfy FIFRA's registration standard, it must cancel the registration or mitigate those risks until they are no longer unreasonable.

FIFRA requires EPA to review each pesticide registration at least once every 15 years to determine whether the pesticide still satisfies the FIFRA registration standard. 7 U.S.C. § 136a(g)(1)(A)(iii) ; *see also* 40 C.F.R. § 155.53(a). During the registration review process, EPA must evaluate the latest information regarding a pesticide's effects on human health and the environment and determine whether the pesticide presents any "unreasonable adverse effects." 7 U.S.C. § 136a(c)(5)(D); 40 C.F.R. § 155.53(a). This process culminates in a registration review decision that "determin[es] whether a pesticide meets, or does not meet, the standard for registration," 40 C.F.R. § 155.57, and finalizes "risk mitigation measures" that are needed to satisfy that standard. *See id.* § 155.58(b). When EPA "does not have the

4

data necessary to complete a registration review but it does have sufficient information to determine that new risk mitigation measures are needed," it can issue an "interim registration review decision" to "require new risk mitigation measures." Pesticides; Procedural Regulations for Registration Review, 70 Fed. Reg. 40,251, 40,268 (proposed July 13, 2005); 40 C.F.R. § 155.56. Any mitigation required by a registration decision or interim decision must be incorporated into the labels for the pesticide's commercial products, which prescribe the terms and conditions of the pesticide's use. *See id.* § 156.10(i).

## C. The Decision

EPA initially registered paraquat in 1964, before re-registering it in 1997. 1-ER-7. After a decade-long review, including multiple comment periods and new human health and ecological risk assessments, EPA found that paraquat presents "risks of concern" to farmworkers, children who live and play near the fields where paraquat is sprayed, and the environment. 1-ER-014–017. Based on a balancing of risks and benefits, EPA concluded paraquat's risks "are too high to meet the FIFRA [registration] standard" without changes to its prior registration. 1-ER-045. Because EPA had not completed all required aspects of paraquat's registration review, however, it issued an interim decision to implement mitigation

5

measures it found were "necessary" to address those unreasonable risks. 1-ER-029, 038.[4]

For example, to protect paraquat applicators, EPA limited aerial spraying to a maximum of 350 acres per applicator per 24-hour period[5] and required closed cabs for large-scale applications. 1-ER-031, 34. To protect farmworkers, EPA established mandatory waiting periods (known as "restricted entry intervals") before workers re-enter fields where paraquat has been sprayed. 1-ER-036–38. And to protect children and other bystanders, EPA created no-spray buffer areas between application sites and schools, parks, playgrounds, and homes. 1-ER-032–33.

Even with those and other mitigation measures, EPA found that farmworkers would remain exposed to unsafe levels of paraquat. 1-ER-015–016; 1-ER-074–086. However, EPA concluded that those remaining risks of concern are "outweighed" by paraquat's benefits to growers. 1-ER-030.

## D.    The Litigation

In September 2021, a coalition of farmworker, public health and environmental organizations filed a petition for review of the Decision. The Petition asserts three primary claims. First, EPA improperly dismissed evidence of the

---

[4] The Decision finalized all aspects of paraquat's registration review other than Endangered Species Act compliance and a required assessment of potential endocrine disrupting effects, which remain outstanding. 1-ER-006.
[5] This limitation does not apply to cotton desiccation and soybean harvesting.

connection between paraquat and Parkinson's disease and therefore failed to protect the public from paraquat's Parkinson's disease risks. *See* Pet'rs' Opening Br. at 29–38, ECF No. 27-1 ("Opening Br."). Second, EPA failed to evaluate the risks from several ways that people are exposed to paraquat, including direct exposure to paraquat drift and paraquat that "volatilizes" and enters a gaseous state after its application. *Id.* at 38–48. Third, EPA's risk-benefit balancing failed to measure or lawfully account for paraquat's costs to public health and the environment. *Id.* at 48–59. Petitioners have not challenged any of the mitigation EPA required in 2021 or sought to vacate the Decision. *Id.* at 59–60. Instead, they solely seek to strengthen it.

Petitioners filed their opening brief on May 25, 2022. Instead of filing a responsive brief, in September 2022 EPA moved for voluntary remand without vacatur to "reconsider the … Decision's volatilization analysis, risk-benefit balancing, and assessment of costs." Mot. for Voluntary Remand Without Vacatur at 1, ECF No. 42-1 ("Prior Remand Mot."). In that motion, EPA explained that *"[v]acatur of the Interim Decision would be unduly disruptive*" and "could lead to confusion about whether the risk mitigation measures that the Agency has required to reduce human health risks are still necessary." *Id.* at 2 (emphasis added). A month later, EPA shifted course, electing to withdraw its remand motion and instead seek a two-year abeyance to reconsider "all of the substantive issues raised in the Petitioners' opening brief and prepare documents that address the issues

7

raised," including Parkinson's disease. Decl. of Michael Goodis ¶ 13, ECF No. 51-2. Petitioners consented to that abeyance, which the Court granted on December 20, 2022. Clerk Ord., ECF No. 52.

In January 2024, EPA received a new vapor pressure study from Intervenor Syngenta that, according to EPA, "indicates greater uncertainty around the potential for paraquat to volatilize and exceed concentration levels of concern than was previously determined." Decl. of Edward Messina ¶¶ 16, 18, ECF No. 63-2. Based on that new information, EPA intends to issue a data call-in for a field volatilization study. *Id.* ¶ 18; *see* 7 U.S.C. § 136a(c)(2)(B) (authorizing EPA to require the generation and submission of necessary data). EPA anticipates that the issuance of that data call-in, implementation of the volatilization study, and consideration of the results "would likely take at least four years." Messina Decl. ¶ 19.

On January 17, 2025, the final day of its requested abeyance, EPA announced that it "does not intend to issue" the reconsideration document "that was originally anticipated in EPA's abeyance plan." Mot. for Voluntary Remand at 9, ECF No. 63-1 ("Mot."). Instead of resuming the litigation, EPA moved for voluntary remand to "allow EPA to withdraw [the Decision] and thereby moot this case." Mot. at 11.

## STANDARD OF REVIEW

"[C]ourts possess 'broad discretion' in deciding whether to grant voluntary

remands." *In re Clean Water Act Rulemaking*, 60 F.4th 583, 596 (9th Cir. 2023). "That broad discretion allows a court to deny a voluntary remand—and thus to proceed to decide the merits of the case—if the risk of harm" from remand "outweighs considerations of judicial and administrative efficiency." *Id.*

Where, as here, an agency seeks remand without confessing error, "a reviewing court must . . . ensure the request for voluntary remand is made in good faith for a substantial and legitimate reason." *N. Coast Rivers All. v. U.S. Dep't of the Interior*, 2016 WL 11372492, at *2 (E.D. Cal. Sept. 23, 2016)); Mot. at 10. "[I]n addition to a compelling justification for the request, the 'scope of the agency's remand request' must be 'appropriate.'" *Stevenson v. Wormuth*, 2023 WL 3791721, at *6 (D. Conn. June 1, 2023) (quoting *Keltner v. United States*, 148 Fed. Cl. 552, 554 (2020)).

## ARGUMENT

### I. EPA Impermissibly Seeks Vacatur of the Decision Without a Ruling on the Merits

EPA seeks remand in order to "withdraw" the Decision and thereby deprive it of any ongoing effect. Mot. at 11. That relief is, in a word, vacatur. *See Vacatur, Black's Law Dictionary* (12th ed. 2024) (defining "vacatur" as "the act of annulling or setting aside"); *see also Ctr. for Food Safety v. Regan*, 56 F.4th 648, 660 (9th Cir. 2022)*.* Because the filing of a petition for review vests this court with "exclusive jurisdiction to affirm or set aside" the challenged decision, EPA cannot withdraw the

9

decision while this suit is pending. 7 U.S.C. § 136n(b); Mot. at 11 n.7. To overcome this jurisdictional hurdle, EPA asks this Court to relinquish its jurisdiction and to remand the Decision for the express purpose of allowing EPA to vacate it. Mot. at 11.

EPA's request must be denied because this Court "lack[s] the authority to vacate" the Decision "without first holding it unlawful." *In re Clean Water Act Rulemaking*, 60 F.4th at 596 (denying remand); *In re Wash. Cattlemen's Ass'n*, 2022 WL 4393033, at *1 (9th Cir. Sept. 21, 2022) (holding "the district court . . . clearly erred in vacating the 2019 Rules without ruling on their legal validity.") Vacatur is a "permanent equitable remedy[]" that "can be awarded against only *illegal* executive action." *In re Clean Water Act Rulemaking*, 60 F.4th at 594 (emphasis in original). Here, the Court has not yet made, and EPA has not requested, a ruling on the merits. Rather, the purpose of its motion is to expunge the Decision to avoid such a ruling. *See* Mot. at 11 ("[R]emand is appropriate because it will allow EPA to . . . moot this case.").

This is not a case where EPA seeks to "reevaluate" its decision or "correct any errors." *In re Clean Water Act Rulemaking*, 60 F.4th at 588. EPA has identified no error that supports withdrawal of the Decision, *see* pp. 11-13 *infra*, and it proposes no reevaluation. Mot. at 11 (explaining that the Decision will be "promptly" withdrawn upon remand). And while EPA proposes a two-step process, with the Court sending the Decision back to EPA so it can be withdrawn, the intent

10

and result of EPA's motion are no different than a court-ordered vacatur. *See* Mot. at 11. EPA cannot sidestep this Circuit's precedent by styling its motion as a request for remand-then-vacatur, as opposed to remand-with-vacatur. *See Harvest v. Castro*, 531 F.3d 737, 746 (9th Cir. 2008) ("The label or description that a party puts on its motion does not control whether the party should be granted or denied relief") (citing *Moore's Federal Practice* § 60.64 (3d ed. 2006). EPA asks this Court to remand the Decision to effectuate its vacatur, without the required finding that the decision is unlawful. Because this Court "lack[s] the authority to do so," EPA's motion must be denied. *In re Clean Water Act Rulemaking*, 60 F.4th at 588.[6]

## II. EPA Lacks a Substantial and Legitimate Basis for Remand

In addition to seeking an impermissible vacatur of the Decision, EPA has no "substantial and legitimate" basis for remand. *N. Coast Rivers All.,* 2016 WL 11372492, at *2 (citing *SKF USA Inc. v. United States*, 254 F.3d 1,022, 1,029 (Fed. Cir. 2001)).

EPA's intent to "further investigate" paraquat's volatilization does not warrant either remand or withdrawal of the Decision. Mot. at 7. Rather, FIFRA

---

[6] In *Ctr. for Food Safety v. EPA*, *see* Mot. at 11, all parties consented to EPA's requested remand, so the question of whether a Court may grant remand to facilitate vacatur without a ruling on the merits was not presented. *See* Joint Mot. for Voluntary Remand at 1, *Ctr. for Food Safety v. EPA*, No. 22-70118 (9th Cir. Apr. 3, 2023), ECF No. 29.

permits EPA to issue a data call-in before, simultaneously with, or after the issuance of an interim decision. 40 C.F.R. § 155.56. Moreover, because new data can only *increase* the risks addressed in the Decision (which assumed no volatilization of paraquat), it provides no basis for withdrawing the decision or for failing to address the other deficiencies that Petitioners have alleged.

Paraquat volatilization occupies approximately five pages of Petitioners' 60-page opening brief. *See* Opening Br. at 15–16, 44–46. Petitioners noted that paraquat had failed EPA's volatilization screening assessment, indicating the need for further study, but that EPA failed to conduct that study before approving the Decision. *Id.* Assuming EPA issues a data call-in for a "field volatility study," as Petitioners requested, Messina Decl. ¶ 18, Petitioners do not intend to pursue their sole claim related to volatilization while EPA collects that data. Decl. of Jonathan Kalmuss-Katz ¶ 10. In fact, Petitioners proposed to EPA a partial remand (without vacatur) of that volatilization claim, which would leave the Decision in place and allow the remainder of the lawsuit to proceed. *Id.* ¶ 8. EPA declined. *Id.* ¶ 9.

Ultimately, EPA seeks remand not to permit the continued study of paraquat (which it is free to do without remand or withdrawal) but to "moot" Petitioners' case. Mot. at 11. EPA is correct that its motion would keep the Court from reaching Petitioners' claims related to EPA's failure to adequately consider paraquat's Parkinson's disease risks, exclusion of exposure pathways other than volatilization,

and one-sided cost-benefit balancing. But an agency's "desire to avoid judicial review" is not a substantial and legitimate basis for remand. *Lewis v. Sec'y of Navy*, 2014 WL 12787221, at *4 (D.D.C. Sept. 2, 2014); *Dieffenbacher v. DeVos*, 2017 WL 4786096, at *3 (C.D. Cal. June 9, 2017).

EPA relies primarily on cases where all parties were seeking remand. *See, e.g.*, *Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 991 (9th Cir. 2012); Joint Mot. for Voluntary Remand at 1, *Ctr. for Food Safety v. EPA*, No. 22-70118 (9th Cir. Apr. 3, 2023). None of them granted the sort of relief that EPA is seeking here: remand to withdraw a decision that no Petitioner is seeking to vacate. *Id.; see also Lutheran Church-Missouri Synod*, 141 F.3d at 349 (denying motion to voluntarily remand and withdraw challenged decision, where agency had not confessed error and remand would frustrate judicial review). Because EPA's desire to further study paraquat's volatilization does not require remand, and its desire to avoid judicial review is not a legitimate basis for that relief, EPA's motion must be denied.

## III.    Remand Would Unduly Prejudice Petitioners

Remand is also improper where, as here, it would "unduly prejudice the non-moving party." *Pac. Coast Fed'n of Fishermen's Ass'ns v. Raimondo*, 2022 WL 789122, at *12 (E.D. Cal. Mar. 11, 2022) (*citing Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 436 (D. C. Cir. 2018)).

At best, remand would delay the resolution of Petitioners' claims by years,

leaving farmworkers and agricultural communities exposed to unsafe levels of a highly toxic pesticide. In the three years this suit has been pending, roughly 33 million pounds of paraquat have been sprayed in the United States, threatening the health of farmworkers and agricultural communities. *See* U.S. Geological Surv., *Estimated Agricultural Use of Paraquat*: *2018 (Preliminary),* https://water.usgs.gov/nawqa/pnsp/usage/maps/show_map.php?year=2018&map=PARAQUAT&hilo=L (last updated Feb. 26, 2024) (chart depicting more than 11 million pounds of annual paraquat use). At that rate, over the four years that EPA seeks to conduct a new volatilization study, roughly 44 million more pounds will be sprayed, and even more people will be harmed. *Id.* And that assumes EPA—an agency with a long history of "egregious[] delay[]" on pesticide remands—adheres to the non-binding schedule in its motion. *In re Nat. Res. Def. Council*, 956 F.3d 1134, 1136 (9th Cir. 2020). In contrast, resumption of the litigation and resolution of Petitioners' claims could result in the near-term strengthening of the Decision, well before EPA's new volatilization study is complete.

While prolonged exposure to paraquat is harmful enough to deny EPA's motion, withdrawal of the Decision could increase those risks by casting doubt on the mitigation that EPA required in 2021. As EPA acknowledged in its September 2022 remand motion, vacatur of the Decision would be "disruptive" and cause "confusion about whether the risk mitigation measures" required by the Decision

14

"are still necessary." Prior Remand Mot. at 2. Those measures include crucial protections for farmworkers and agricultural communities, which EPA itself found are needed to address paraquat's unacceptable risks. 1-ER-029–30; *see also* p. 6 *supra*. Any weakening or loss of existing mitigation would cause severe harm.

EPA claims that the mitigation required by the Decision "ha[s] been fully implemented by the registrants in the form of label amendments." Mot. at 12. But, as EPA acknowledges, nothing prevents registrants from submitting amended labels to remove mitigation after EPA withdraws the Decision. *Id.* (acknowledging the possibility of "new paraquat labels or label amendments").

EPA's claim that "new paraquat labels or label amendments . . . would need to account for paraquat risks regardless of Interim Decision withdrawal" is meaningless without any commitment as to *how* the revised labels would "account for" such risks. Mot. at 12. While the paraquat risk assessments may be unchanged, mitigation under FIFRA is not based on risk alone, but rather a balancing of the pesticide's risks and benefits. *Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 522–23 (9th Cir. 2015). That balancing—which determines whether a pesticide presents "unreasonable adverse effects" and how registrants must mitigate those effects—is memorialized in the Decision that EPA seeks to withdraw, opening the door to a new administration striking a different balance and approving less mitigation.

15

EPA's non-binding statement that its "*current analysis* of the risks and benefits of paraquat does not support removing . . . mitigation measures" is similarly non-committal, particularly when EPA is planning to expunge its risk-benefit determination. Messina Decl. ¶ 11 (emphasis added). FIFRA requires registrants to "take the action required in a[n] . . . interim registration review decision," and correspondingly prohibits actions such as label amendments that would violate the mitigation required in the Decision. 40 C.F.R. § 155.58(d). If the Decision is withdrawn, there is no assurance that EPA will maintain existing mitigation measures.

EPA found that current paraquat uses present serious health risks to farmworkers. *See, e.g.*, 1-ER-15–16 (finding risks of concern even after implementation of mitigation measures). Remand would not only prolong those risks but potentially make them more severe by weakening the safeguards that EPA itself found were necessary to address paraquat's unreasonable adverse effects.

## IV.    Remand Would Not Conserve the Parties' or the Court's Resources

Remand will not "preserve party resources" or "obviat[e] the need for additional briefing on the merits of Petitioners' claims." Mot. at 10. To the contrary, EPA's remand motion leaves most of the issues in Petitioners' opening brief unresolved, all but ensuring a return to court to re-litigate issues that have already been raised and briefed in this case.

16

Unlike EPA's prior motion for an abeyance to reconsider "all of the substantive issues raised in the Petitioners' opening brief," Goodis Decl. ¶ 13, here EPA seeks remand to consider a single, discrete issue related to paraquat volatilization. EPA does not intend to revisit, much less to correct, its analysis of paraquat's Parkinson's disease risks, its failure to evaluate direct exposure to paraquat drift, or its flawed weighing of paraquat's risks and benefits. *See* Mot. at 7–8. Nor did EPA complete its reconsideration of those other issues during the recent abeyance. *Id.* at 9. There is thus no reason to believe that remand would address most of the issues Petitioners have raised in this case. *See Sierra Club v. Nat'l Marine Fisheries Serv.*, 711 F. Supp. 3d 522, 536 (D. Md. 2024) (denying remand where "the scope of reconsideration is considerably narrower than the scope of the plaintiffs' challenge").

EPA's judicial economy arguments also ignore the fundamental inconsistency between the timeframe for EPA's new volatilization study and EPA's statutory obligation to complete paraquat's final registration review by October 1, 2026. Messina Decl. ¶ 9.[7] With or without remand, EPA will not complete its new volatilization analysis until long after that date. *Id.* ¶ 19. If this case proceeds,

---

[7] Under FIFRA, the final registration review deadline for paraquat and many other pesticides had been October 1, 2022. 7 U.S.C. § 136a(g)(1)(A)(iii). The Consolidated Appropriations Act of 2023 extended that deadline until October 1, 2026. Consolidated Appropriations Act, Pub. L. No. 117-328, § 711(a), 136 Stat. 4459 (2022).

17

however, EPA will likely have this Court's rulings on Petitioners' other claims,

informing the final registration decision and reducing the likelihood of further

litigation. "If the court were to remand," on the other hand, "EPA would lack

guidance on the validity of [Petitioners'] other challenges, and the parties

potentially could be mired in piecemeal litigation over EPA's [final registration] for

years to come." *Am. Waterways Operators v. Wheeler*, 507 F. Supp. 3d 47, 58

(D.D.C. 2020). "No one benefits from such an approach." *Id.*

## V.     Remand Would Sanction a Violation of EPA's Statutory Deadline

In addition to its inefficiency, EPA's proposed remand schedule would violate

FIFRA's deadline for a final registration review decision. EPA claims that, at the end

of its four-year analysis of paraquat's volatilization, it would determine whether

changes to its risk assessment or mitigation measures are needed. Messina Decl. ¶¶

18–20. However, as explained above, EPA must issue a final registration review

decision for paraquat by October 2026. EPA does not explain how it would reconcile

those dates, stating only that "the parties will have the opportunity to challenge . . .

any agency failure to meet relevant statutory deadlines." Mot. at 12. But inviting an

unreasonable delay lawsuit does not advance judicial economy, and this Court

"cannot . . . grant[]" relief that "would violate a clear statutory provision." *Univ.*

*Med. Ctr. of S. Nevada v. Shalala*, 5 F. Supp. 2d 4, 8 (D.D.C. 1998).

Alternatively, since EPA has not committed to completing any new analyses of Petitioners' claims by October 2026, if EPA does adhere to that deadline, any decision that it finalizes would likely be substantially similar to the one EPA seeks to remand and withdraw. As described above, that approach would engender more litigation, not less. "With all the parties here, the administrative record submitted, and the issues properly presented, the most efficient course is to proceed to the merits and determine whether the [Decision] complies with the law." *Sierra Club*, 711 F. Supp. 3d at 539; *see also AT&T Corp. v. Fed. Commc'ns Comm'n,* 841 F.3d 1,047, 1,054 (D.C. Cir. 2016) ("[J]udicial economy suggests that we address some of [Petitioners'] other arguments to avoid re-litigation of identical issues in a subsequent petition.")[8]

## CONCLUSION

"There comes a point when relegating issues to proceedings that go on without conclusion in any kind of reasonable time frame is tantamount to refusing to address the issues at all and the result is a denial of justice." *MCI*

---

[8] Given the Court's "broad discretion . . . to deny a voluntary remand" for the reasons set forth above, *In re Clean Water Act Rulemaking*, 60 F.4th at 596, the Court need not determine whether EPA's motion was "made in bad faith." Mot. at 10 (citing *Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d at 992). To the extent the Court chooses to do so, however, EPA's request to withdraw a decision containing unchallenged and "necessary" mitigation, 1-ER-029, resulting in self-described "confusion" and "disrupti[on]," Prior Remand Mot. at 2, in order to "moot" Petitioners' claims, Mot. at 11, support denial of EPA's motion under that standard as well.

*Telecommunications Corp. v. Fed. Commc'ns Comm'n.*, 627 F.2d 322, 344 (D.C. Cir. 1980). This case has reached that point.

After a decade-long administrative process, litigation over the Decision has been pending for more than three years, the last two in an EPA-requested abeyance. Remand would consign Petitioners to years more delay while their members and countless others remain exposed to a highly toxic pesticide. Withdrawal of the Decision would compound those harms and violate this Circuit's precedent.

"At this point, the [Petitioners] are entitled to have their complaint[s] decided on the merits." *Sierra Club*, 711 F. Supp. 3d at 540. The Court should deny EPA's motion and direct the parties to propose an updated schedule for further briefing within two weeks of the Court's order on remand.

Respectfully submitted,

*s/ Jonathan Kalmuss-Katz*
Jonathan Kalmuss-Katz
Earthjustice
48 Wall Street, 15th Floor
New York, NY 10005
T: (212) 845-7376
jkalmusskatz@earthjustice.org

Patti A. Goldman
Noorulanne Jan
Earthjustice
810 Third Avenue, Suite 610
Seattle, WA 98104
T: (206) 343-7340
pgoldman@earthjustice.org
njan@earthjustice.org

20

Gregory C. Loarie
Earthjustice
50 California Street, Suite 500
San Francisco, CA 94111
T: (415) 217-2000
gloarie@earthjustice.org

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on February 10, 2025.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: February 10, 2025 　　　　　　 */s/Jonathan Kalmuss-Katz*
　　　　　　　　　　　　　　　　　　Jonathan Kalmuss-Katz

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 28(d)(2) and Circuit Rule 27-1(d) because it contains 4,648 words, excluding the parts of the brief exempted by Fed. R. App. P. 27(a)(2)(B), and is not longer than 20 pages. This brief complies with the typeface and type style requirements of Fed. R. App. P. 28(d)(1)(E) because it has been prepared in a proportionally spaced typeface using Microsoft Word and 14-point Times New Roman font.

Dated: February 10, 2025          */s/Jonathan Kalmuss-Katz*
                                  Jonathan Kalmuss-Katz